IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

KAREN A. GONZALES,

    Plaintiff,

v.                                                                  CIV 11-0257 KBM/RHS

MICHAEL J. ASTRUE,
Commissioner, Social Security
Administration,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Plaintiff's Motion to Reverse or Remand Administrative Agency Decision *(Doc. 15)*, filed August 15, 2011. Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73(b), the parties have consented to have me serve as the presiding judge and enter final judgment. *See Docs. 5, 7*. The record has been carefully and meticulously considered as have the parties' arguments, and I find that this matter should be remanded back to the Commissioner for further proceedings.

I.    **FACTUAL BACKGROUND**

Plaintiff Karen A. Gonzales has released over 500 pages of medical records dating back to July 2002 in support of her claims of disability. *See generally Docs. 10, 12* (hereinafter referred to as "the Record" or "R"). Originally, Ms. Gonzales applied for benefits indicating a primary diagnosis of fibromyalgia and a secondary diagnosis of scoliosis. *See R.* at 41, 42. After her original claims were denied in February 2008, Ms. Gonzales applied for reconsideration, identifying a primary diagnosis of "disorders of muscle, ligament and fascia" and a secondary diagnosis of "curvature of spine." *See R.* at 43, 44. Ms. Gonzales' requests for

reconsideration were denied April 29, 2008. *See id.* Both initially and on reconsideration, the Administration found that Ms. Gonzales was not disabled. *See R.* at 41-44.

Martin Trujillo, M.D. performed a Disability Determination Examination on February 2, 2008, noting that "fibromyalgia was diagnosed in the year 2004." *See R.* at 200. After a complete physical exam, Dr. Trujillo found "minimal thoracodorsal scoliosis with a slight pelvic tilt." *Id.* at 201. He found no musculoskeletal tenderness to palpation. *Id.* Neurologically, Dr. Trujillo found cranial nerves II-XII within normal limits and no motor or sensory deficits to the upper or lower extremities. *Id.* His overall impressions of Plaintiff were: (1) obesity, (2) fibromyalgia, (3) asthma, (4) irritable bowel syndrome, (5) migraine headaches, (6) degenerative joint disease, degenerative disk disease, appropriate for age and weight, (7) scoliosis, asymptomatic, and (8) depression. *Id.* at 202. Dr. Trujillo noted that Ms. Gonzales "has a myriad of functional syndromes and all appear to interact along with her depression and make it difficult to estimate functional capacity or employment capabilities; however, she should be able to perform light to limited moderate duty." *Id.*

As a follow-up to Dr. Trujillo's DDE, the Administration obtained a Residual Functional Capacity Assessment from Rayme L. Romanik, M.D. *See R.* at 203-210. Exertionally, Dr. Romanik found that Plaintiff had the following limitations: (1) she could occasionally lift and/or carrry only 20 lbs.; (2) she could frequently lift and/or carry only 10 lbs.; (3) she could stand or walk (with normal breaks) about 6 hours in an 8-hour day; (4) she could sit (with normal breaks) about 6 hours in an 8-hour workday; and (5) there were no limits on her ability to push and/or pull. *See R.* at 204. Dr. Romanik noted that Plaintiff reported having diagnoses of scoliosis and degenerative disc disease of the lumbar spine, but he found no x-rays in the record. *See id.* at 205. Moreover, Dr. Romanik noted that Plaintiff showed full ROM upon examination. *See id.*

Dr. Romanik found no limitations established in terms of Plaintiff's postural, manipulative, visual, communicative, or environmental capabilities. *See R.* at 205-207. He further found that Plaintiff's treating source statements were consistent with his own findings. *See id.* at 209.

The Administration also requested a Psychiatric Review for Plaintiff, completed by J. LeRoy Gabaldon, Ph.D. *See R.* at 211-224. Dr. Gabaldon found that Plaintiff had depression, but found that this impairment did not satisfy diagnostic criteria in the Listings. *See id.* at 214. Dr. Gabaldon rated Plaintiff's functional limitations as follows: mild restriction in the activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. *See id.* at 221. Regarding Plaintiff, Dr. Gabaldon noted, "There is no indication of thought disorder, substance use, suicidal intent or severe cognitive limitation. There is no evidence that she has ever been psychiatrically hospitalized. She does not indicate any severe functional limitation." *See id.* at 223.

On March 21, 2008, Plaintiff requested reconsideration of the Administration's original determination of no disability. *See R.* at 49-52. Plaintiff indicated she had no additional evidence to submit in support of her position. *See R.* at 49. The Administration again denied benefits on reconsideration. *See R.* at 43-44, 447-448. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). *See R.* at 59-64.

A hearing was held before ALJ William H. Helsper on September 2, 2009. *See R.* at 13. On November 17, 2009, ALJ Helsper issued his decision, concluding that "the claimant has not been under a disability within the meaning of the Social Security Act from July 1, 2007 through the date of this decision. *Id.* Plaintiff appealed ALJ Helsper's decision, first petitioning the Administration's Appeals Council, which found no reason to review the ALJ's decision, and

then appealed to this Court.

## II.     LEGAL STANDARD

The Court reviews decisions denying social security disability benefits "only to determine whether the correct legal standards were applied and whether the factual findings are supported by substantial evidence in the record." *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Cowan v. Astrue*, 552 F.3d 1182, 1185 (10th Cir. 2008) (internal quotation marks omitted). The ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (internal quotations and citations omitted). The ALJ must consider all relevant medical evidence in making his or her findings and must "discuss the uncontroverted evidence he chooses not to rely upon as well as significantly probative evidence he rejects." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citation omitted).

A "disability" in this context requires both "an inability to engage in any substantial gainful activity" and "a physical or mental impairment, which provides reason for the inability." *Barnhart v. Walton*, 535 U.S. 212, 217 (2002) (internal quotation marks omitted). The impairment must be a "'medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (quoting 42 U.S.C. § 423 (d)(1)(A)). A claimant must establish that the onset of disability was before the date last insured. *Flaherty v. Astrue*, 515 F.3d 1067, 1069 (10th Cir. 2007).

The Court may neither reweigh the evidence nor substitute its judgment for that of the agency. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." (internal citation and quotation omitted)). The Court must meticulously examine the record, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262.

## The Sequential Evaluation Process

"To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)(1)(A)). The Social Security Administration employs a "five-step sequential evaluation process to determine disability." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). "If at any step in the process the Secretary determines that the claimant is disabled or is not disabled, the evaluation ends." *Thompson*, 987 F.2d at 1486. *Accord Lax v. Astrue*, 489 F.3d at 1084 ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary.").

Steps One through Three require the claimant to show that: (1) he is not working at a substantial gainful activity; (2) he has a severe medically determinable physical or mental impairment or combination of impairments which significantly limit his ability to perform basic work activities; and (3) his impairment is equivalent to an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 and meets the duration requirement at 20 C.F.R. §§ 404.1520,

416.920.  *See Krauser v. Astrue*, 638 F.3d 1324, 1326 (10th Cir. 2011); *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010).

When a claimant does not meet any of "the Listings" in Part 404, Subpart P, Appendix 1, he is not entitled to a presumption of disability.  *See* 20 C.F.R. § 404.1520(a)(4)(iii) ("If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.").  The Administration must therefore determine the claimant's Residual Functional Capacity ("RFC").  *See* 20 C.F.R. § 404.1520(e) ("If your impairment(s) does not meet or equal a listed impairment, we will assess and make a finding about your residual functional capacity based on all the relevant medical and other evidence in your case record, as explained in § 404.1545.").

At Step Four, the Administration assesses whether the claimant's RFC permits him to perform his past relevant work.  *See* 20 C.F.R. § 404.1520(a)(4)(iv).  Where the claimant can still perform his past relevant work, he is not disabled.  *See id.*  In other words, Step Four "requires the claimant to show that the impairment or combination of impairments prevents him from performing his past work."  *Wilson*, 602 F.3d at 1139 (quoting *Lax v. Astrue*, 489 F.3d at 1084).

If the claimant cannot perform his past relevant work, "the burden of proof shifts to the Commissioner at [S]tep [F]ive to show that the claimant retains sufficient RFC [residual functional capacity] to perform work in the national economy, given [his] age, education, and work experience."  *Id.* (quoting *Lax*, 489 F.3d at 1084).

## III.   ANALYSIS

### A.   Summary of the ALJ's Decision

At Step Two, ALJ Helsper found that Plaintiff has the following severe impairments:

migraines, fibromyalgia, degenerative disc disease, scoliosis, and degenerative joint disease in her right knee, as well as obesity. *See R.* at 15. ALJ Helsper found Plaintiff's asthma, irritable bowel syndrome, gastroesophageal reflux disease ("GERD"), and depression were not severe. *See id.* at 16.

At Step Three, ALJ Helsper determined that none of Plaintiff's impairments nor any combination of impairments meets or medically equals the Listings. *See id.* at 16-17. ALJ Helsper went on to find that Plaintiff possesses the Residual Functional Capacity ("RFC") to perform the full range of sedentary work. *See id.* at 17. Although the claimant's impairments could reasonably be expected to cause Plaintiff's alleged symptoms, ALJ Helsper found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." *R.* at 18. Specifically, ALJ Helsper found that Plaintiff's "allegations of the intensity and persistence of pain are not consistent with the medical record as a whole." *Id.* In ALJ Helsper's view, Plaintiff's "subjective complaints of pain are out of proportion to the objective medical evidence" and that her "complaints are rarely supported by the objective medical evidence." *R.* at 20.

ALJ Helsper considered new evidence not available to the Administration as part of its original disability determination or on reconsideration of that determination. Most significantly, ALJ Helsper considered the "Fibromyalgia Residual Functional Capacity Questionnaire" completed by Plaintiff's treating rheumatologist, Lyle B. Amer, M.D., and Holly Purcell-Callin, C.N.P. of Dr. Amer's office. *See R.* at 21, 489-493. Dr. Amer reports that Plaintiff meets the American College of Rheumatology criteria for fibromyalgia, and has other diagnoses including degenerative disc disease of the C-spine and L-spine. *See id.* at 489. Clinical findings in support

of these impairments include MRIs of the C-spine and L-spine and arthritis trigger point testing. *See id.* Dr. Amer indicates that Plaintiff's pain and other symptoms interfere with attention and concentration needed to perform even simple work tasks "frequently," or at a rate of 34-66% of an eight-hour workday. *See id.* at 490. He finds his patient incapable of even low stress jobs. *See id.* In Dr. Amer's opinion, Plaintiff may sit for an hour and thirty minutes at a time and stand for an hour and ten minutes. *See id.* at 491. Dr. Amer also opines that Plaintiff may sit for three hours in an eight-hour workday and stand for two. *See id.* Plaintiff was also likely, according to Dr. Amer, to miss more than four days of work per month as a result of her impairments. *See id.* at 492.

ALJ Helsper did not accord great weight or controlling weight to Dr. Amer's opinion. *See R.* at 21. Instead, ALJ Helsper appears to have rejected Dr. Amer's opinion, finding that it was inconsistent with other unspecified medical evidence in the record, did not refer to any specific test results, and was not based on a full exam. *See id.* Moreover, ALJ Helsper found that Dr. Amer's opinion was isolated from other treating and examining sources in that no other treating source found that Plaintiff was disabled. *See id.*

Therefore, at Step Four, ALJ Helsper found that Plaintiff was able to perform her past relevant work as a secretary and switchboard operator, both of which are classified as sedentary work according to the testimony of the vocational expert. ALJ Helsper ultimately found, at Step Five, that Plaintiff was not disabled under the Social Security Act.

Plaintiff challenges ALJ Helsper's Step Four findings in three regards. First, Plaintiff argues that ALJ Helsper's RFC determination violates Social Security Ruling 96-8p. *See Doc. 16* at 17-20. Second, Plaintiff contends that ALJ Helsper did not properly consider Dr. Amer's RFC report. *See id.* at 20-22. Finally, Plaintiff alleges that ALJ Helsper's credibility

8

determination regarding Plaintiff was erroneous.  *See id.* at 22-24.

   **B.**  **Dr. Amer's Opinions Are Not Entitled to Controlling Weight or Deference Under the Applicable Factors.**

  ALJ Helsper rejected Dr. Amer's opinions as expressed in the RFC Questionnaire, finding that "Dr Amer's statements are inconsistent with the medical evidence on record and did not refer to any specific test results." *R.* at 21.  Further, ALJ Helsper found that "Dr. Amer did not fully exam (sic) the claimant," and "no other treating physician or acceptable medical source has opined that the claimant is disabled, thus this opinion is isolated from the other treating and examining sources." *Id.*

  An ALJ "must give good reasons in the notice of determination or decision for the weight assigned to a treating physician's opinion." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal quotations omitted).  First, the ALJ should determine "whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques." *Id.* (quoting SSR 96-2p, 1996 WL 374188, at *2).  Assuming the opinion is well-supported, the ALJ "must then confirm that the opinion is consistent with other substantial evidence in the record." *Id.*  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Id.*

  Under the foregoing test, ALJ Helsper properly found that Dr. Amer's opinions are not entitled to controlling weight.  Initially, there appears to be no clinical or laboratory diagnostic testing in the record to support Dr. Amer's opinions regarding Plaintiff's limitations.  Although Dr. Amer has signed off on a number of specific functional limitations experienced by Plaintiff, ALJ Helsper correctly notes that there is no record of Dr. Amer having ever examined Plaintiff.  *See R.* at 21.  On each of the five occasions that Plaintiff visited Dr. Amer's office, she was seen

by Nurse Practitioner Holly Purcell-Callin. *See R.* at 495-497. There is no indication that Dr. Amer saw Plaintiff during any of these visits. *See id.* The records of Plaintiff's office visits with Ms. Purcell-Callin contain only one reference that suggests physical examination—at Plaintiff's initial visit on January 19, 2009, Ms. Purcell-Callin noted "SLR Neg" and "DTRS ++," most likely reflecting Plaintiff's ability to perform "straight leg raises" and "deep tendon reflexes." *See R.* at 497. Whereas the RFC Questionnaire completed by Ms. Purcell-Callin and signed by her and Dr. Amer indicates that Plaintiff meets the American College of Rheumatology criteria for fibromyalgia, there is no reference in the record to this criteria or any testing of Plaintiff pursuant thereto. *See R.* at 495-497, 489. Similarly, the RFC Questionnaire states that "arthritis trigger point pain areas on body" are among the clinical findings that show Plaintiff's impairments, yet there is no reference in the record to any trigger point testing of Plaintiff. *See id.* There appears to be no testing whatsoever in the record relative to Plaintiff's fibromyalgia.

Even the testing that Ms. Purcell-Callin ordered relative to Plaintiff's complaints of back pain indicate only "mild" clinical findings—not the sort of evidence necessary to support Dr. Amer's opinion that Plaintiff is completely unable to work. *See R.* at 472-473 (indicating "mild/early multilevel spondylosis" of the cervical spine; "mild multilevel discogenic degenerative change" in Plaintiff's thoracic spine; and "very mild/early L4-5-S1 disc space height loss and L5-S1 facet DJD, but no fracture or spondylolysis" in her lumbar spine).

Although a treating physician's opinion may not be entitled to controlling weight, such opinions are generally still entitled to some deference and must be weighed according to the following factors:

> (1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the

physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*See Watkins*, 350 F.3d at 1300.  Although ALJ Helsper did not specifically discuss each of the factors above, I find that he has sufficiently explained his reasons for rejecting Dr. Amer's opinion altogether.  *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (holding that an ALJ's failure to explicitly discuss all the *Watkins* factors may not prevent this Court from performing a meaningful review).  I further find, given the lack of examination or testing of Plaintiff to support his opinions, that substantial evidence supports ALJ Helsper's decision to reject Dr. Amer's opinions.

### C. Specific Findings Regarding Plaintiff's Credibility Are Necessary.

ALJ Helsper found that "[Plaintiff's] allegations of the intensity and persistence of pain are not consistent with the medical record as a whole," but specifically recognized that Plaintiff "has some level of pain and functional loss."  *R.* at 18.  Nonetheless, ALJ Helsper noted that "even moderate levels of pain and functional loss are not, in and of themselves, incompatible with the ability to perform the exertional and non-exertional requirements of work-related activities on a consistent, sustained basis."  *Id.*  After discussing the objective medical evidence in entire record, the ALJ found that "neither the objective medical evidence nor the allegations of the claimant establish that the claimant is so limited as to warrant a finding of disabled."  *Id.*

"It is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" SSR 96-7p, 1996 WL 374186, at *2.  Rather, the ALJ must cite "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to

make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.*

In the present case, ALJ Helsper indicates that "[Plaintiff's] subjective complaints are out of proportion to the objective medical evidence," yet he does not reference any specific complaints or other statements by Plaintiff that he finds not credible. *R.* at 20. Moreover, the Administration recognizes that pain is a symptom that can "sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone." SSR 96-7p, 1996 WL 374186, at *1. For this reason, more than an apparent inconsistency with objective evidence is required to support a finding as to credibility. *Id.*

Along these lines, I find it significant that Plaintiff appealed her initial finding of no disability on March 24, 2008, indicating, "My headaches are worse and have turned into migraines." *See R.* at 154-161. Yet just four days before, on March 20, 2008, Plaintiff reported to Neurologist Elizabeth LaKind, M.D. that her prescription for Topomax was "really working" and that she now had "very few significant headaches." *See R.* at 397. After that statement, however, it appears that Plaintiff consistently reported pain, including headaches to Dr. LaKind, without reported relief from prescribed medication. *See R.* at 502-503.

Given the lack of specific instances noted and the unanswered questions regarding Plaintiff's credibility, I will remand this case for further consideration by the Administration and for specific findings concerning Plaintiff's credibility.

**C.   Meaningful Review Requires Specific Findings Regarding Plaintiff's Functional Capacity.**

ALJ Helsper found that Plaintiff was capable of the full range of sedentary work. *See R.* at 21. Physically speaking, "[s]edentary work involves lifting no more than 10 pounds at a time

and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). "[A] certain amount of walking and standing is often necessary in carrying out job duties." *Id.* Because ALJ Helsper determined that Plaintiff was capable of the full range of sedentary work, his RFC assessment includes "unskilled work," or "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time," as well as semi-skilled and skilled work. *See* 20 C.F.R. § 404.1568(a), (b), and (c).

Social Security Ruling 96-8p provides that "[t]he adjudicator must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." SSR 96-8p, 1996 WL 374184, at *5. Further, "[t]he RFC assessment must address both the remaining exertional and nonexertional capacities of the individual." *Id.* Exertional capacity includes consideration of the claimant's ability to walk, sit, stand, lift, carry, push, and pull. *See id.* An assessment of nonexertional capacity should consider physical activities such as stooping, climbing, reaching, handling, seeing, hearing, speaking, understanding, remembering instructions, and responding appropriately to supervision. *See id.* at *6.

Plaintiff is correct in noting that the ALJ did not assess Plaintiff's specific limitations. Even though I have found that ALJ Helsper appropriately disregarded Dr. Amer's opinions, the Court cannot meaningfully review the RFC assessment without some consideration of the remaining evidence as to Plaintiff's specific exertional and nonexertional limitations. I find that remand is therefore appropriate on this ground as well.

Wherefore,

IT IS HEREBY ORDERED that Plaintiff's Motion for Remand *(Doc. 15)* is granted and this matter remanded to the Commissioner for further proceedings.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE